**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
RUBEN DIAZ-MARTIN,            :
                              :   Civil Action No. 11-6692 (PGS)
Petitioner,                   :
                              :
v.                            :   **OPINION**
                              :
ERIC H. HOLDER, JR., et al.,  :
                              :
Respondents.                  :
_____:

**APPEARANCES:**

**RUBEN DIAZ-MARTIN**, Petitioner pro se
A# 021021643
Monmouth County Correctional Institution
1 Waterworks Road
Freehold, N.J 07728

**COLETTE R. BUCHANAN**, Counsel for Respondents
Office of the U.S. Attorney
970 Broad Street
Suite 700
Newark, N.J. 07102

**SHERIDAN**, District Judge

    Petitioner, Ruben Diaz-Martin ("Petitioner"), is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Monmouth County Correctional Institution in Freehold, New Jersey, pending his removal from the United States.  Petitioner filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in

which he challenges his detention by Respondents Eric Holder, Jr., Janet Napolitano, Christopher Shanahan and B. Elwood ("Respondents" or the "Government").  For the reasons stated below, the petition for habeas relief will be denied.[1]

## I. BACKGROUND

According to the petition, Petitioner entered the United States in 1970 on a student visa.  (Pet. ¶ 12.)  According to Respondents, Petitioner entered the United States without inspection near San Ysidro, California, in February 1974.  (Resp't's Br., Ex. 11, Record of Deportable Alien.)  On November 14, 1974, the former Immigration and Naturalization Service took Petitioner into custody and placed him in deportation proceedings.  Petitioner was charged with deportability pursuant to section 241(a)(2) of the Immigration and Nationality Act: entry without inspection.  (Resp't's Br., Snitkovskaia Decl. ¶ 3, Ex. 1, Order to Show Cause.)  On November 15, 1974, the Immigration Judge permitted Petitioner to voluntarily depart the United States by November 18, 1974, which he failed to do, turning his order of voluntary departure into an order of deportation.  (Id. at ¶ 4, Exhibit 2, Decision of the Immigration Judge.)  On June 1, 2011, the New York Fugitive Operations of

---

[1] Petitioner filed a second § 2241 petition approximately six months after he filed the instant petition.  See Diaz-Marin v. Holder, Civil Action No. 12-2571 (MAS).  That petition raises the same issues and alleges identical facts as those raised here.  However, the Court notes that Petitioner identifies himself as "Diaz-Martin" in the instant Petition and "Diaz-Marin" in the second petition.

2

Immigration and Customs Enforcement ("ICE") arrested Petitioner pursuant to an outstanding Warrant of Removal/Deportation.  (Id. at ¶ 4, Ex. 3.)  Since that time, he has been detained at the Monmouth County Jail in Freehold, New Jersey.  Id.

On June 1, 2011, Petitioner was served with a Form I-229(a) Warning for Failure to Depart.  (Id., Ex. 4.)  The I-229(a) informed Petitioner of potential penalties if he failed to depart or to cooperate with efforts to obtain travel documents for him or otherwise acts to prevent his removal.  The I-229(a) specifically informed Petitioner that the Immigration and Naturalization Act (INA) provides for the extension of the statutory removal period if the alien refuses to make application in good faith for a travel document.  On June 7, 2011 ICE served Petitioner with a Notice to Alien of File Custody Review which informed him that his custody would be reviewed on or about August 15, 2011.  (Id., Ex. 5.)

On June 7, 2011, ICE Enforcement and Removal Operations ("ERO") contacted the El Salvador consulate requesting a travel document for Petitioner.  (Id., Snitkovskaia Decl. ¶ 7.)  On July 7, 2011 and July 21, 2011, ICE served Petitioner with an I-229(a) Warning for Failure to Depart which Petitioner refused to sign each time.  (Id., Snitkovskaia Decl. ¶ 12, Ex. 6.)  On July 29, 2011, the El Salvador Consulate notified ERO that it would be scheduling an interview for Petitioner for the purpose of issuing

3

a travel document.  (Id. at ¶ 8.)

On August 30, 2011, following a file custody review, ERO Field Office Director Christopher Shanahan issued a decision to continue Petitioner's detention after the ninety-day removal period pursuant to 8 C.F.R. § 241.4(h) and (k)(1).  (Id., Snitkovskaia Decl. ¶ 6, Ex. 7, Decision to Continue Detention.) In the Decision, FOD Shanahan noted that Petitioner had failed to depart the United States as ordered in 1974.  He further noted Petitioner's criminal history, which included convictions for three felonies and fifteen misdemeanors, including DWI, Reckless Endangerment, Criminal Sale of a Controlled Substance, Sexual Abuse and Sexual Misconduct.  Shanahan determined that Petitioner had not provided any evidence that he would not be a flight risk or pose a threat to society if released.  On September 7, 2011, ICE served Petitioner with the Decision to Continue Detention, which advised him that he must demonstrate that he was making reasonable efforts to comply with the order of removal and that he was cooperating with ICE efforts to remove him by taking whatever actions ICE requests to effect his removal.  Petitioner refused to sign the notice acknowledging receipt of the Decision. (Id., Snitkovskaia Decl. ¶ 6.)

In an effort to obtain travel documents for Petitioner, ERO was in contact with the El Salvador consulate on August 8, 2011, August 16, 2011, August 25, 2011, September 16, 2011 and

September 21, 2011 regarding the status of the interview. (Id., Snitkovskaia Decl. ¶ 9.)  On October 28, 2011, the El Salvador Consulate interviewed Petitioner for the purpose of issuing a travel document.  (Id., Snitkovskaia Decl. ¶ 10.)  On November 15, 2011, ERO contacted the El Salvador Consulate regarding the status of the travel document.  (Id., Snitkovskaia Decl. ¶ 11.)  On December 8, 2011 and December 15, 2011, ERO again contacted the El Salvador consulate regarding the status of a travel document. (Id., Snitkovskaia Decl. ¶ 13.)  On October 15, 2011, November 15, 2011 and November 21, 2011, ICE served Petitioner with an I-229(a) Warning for Failure to Depart which Petitioner refused to sign.  (Id., Snitkovskaia Decl. ¶ 12, Ex. 8.)  On December 20, 2011, ICE-Headquarters Case Management Unit issued a decision to continue Petitioner's detention pursuant to 8 C.F.R. § 241.4(k)(2) following a custody review.  (Id., Snitkovskaia Decl. ¶ 14, Ex. 9.)  The Decision noted Petitioner's failure to voluntarily depart in 1974 and his extensive criminal history. The Decision noted that ICE was working with the El Salvador government to obtain a travel document and that there was no reason to believe that his removal would not take place in the reasonably foreseeable future.  The Decision also advised Petitioner that he must demonstrate that he was cooperating with ICE's efforts to remove him.  (Id.)  ICE served the Decision on Petitioner on December 30, 2011, along with an I-229(a) Warning

for Failure to Depart, which Petitioner refused to sign. (Id., Snitkovskaia Decl. ¶ 14, Ex. 9.)

On January 4, 2012, ERO contacted the El Salvador consulate regarding the status of a travel document. (Id., Snitkovskaia Decl. ¶ 15.) On January 20, 2012, the El Salvador consulate informed ERO that it would re-interview Petitioner as he had failed to provide sufficient evidence of his identity. (Id., Snitkovskaia Decl. ¶ 16.) On January 24, 2012, the El Salvador consulate re-interviewed Petitioner to obtain additional evidence of his identity. The consulate reported that Petitioner refused to provide detailed information about his identity. The El Salvador consulate indicated that it would further investigate Petitioner's case for evidence of identity. (Id., Snitkovskaia Decl. ¶¶ 17-18.) On February 28, 2012, Navas Daniel, a representative of the El Salvador consulate reported to Deportation Officer Anna Snitkovskaia that Petitioner had given the consulate identity information - name (Diaz-Martin with a "t"), date of birth (1951) and place of birth – that does not match the consulate's files. The consulate is continuing to investigate and is trying to verify petitioner's identity through family in El Salvador. Mr. Daniel believes Petitioner is lying to him about his identity, however the consulate cannot issue a travel document until Petitioner confirms his true and correct identity or the consulate confirms his identity with family.

(Id., Snitkovskaia Decl. ¶ 19.)

Documentation that was matched by the Petitioner's fingerprints to his encounter with INS in 1974 confirms that his name is "Marin" not "Martin." Additionally, a New York State Identification Card and a Social Security Card which were confiscated from him at his arrest by ICE officers on June 1, 2011, also state his last name as Diaz-Marin. (Id., Snitkovskaia Decl. ¶ 20.) As of the filing of the Answer, Petitioner had failed to comply with the El Salvador Consulate's attempts to verify his identification. (Id., Snitkovskaia Decl. ¶ 21.)

Petitioner argues that he has cooperated fully with all efforts of ICE to remove him. He states that he has provided his correct name and biometric information. (Pet. ¶ 16.) He states that it is his understanding that the Consulate General of El Salvador has not responded to the government's requests for a travel document and as such, it is unlikely that he will be removed in the near future. (Id. at ¶¶ 15, 25.)

## II. DISCUSSION

### A. Legal Standard

Petitioner brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires that the petitioner show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has subject matter jurisdiction over this Petition because Petitioner

is being detained within its jurisdiction at the time he filed his petition, and because Petitioner asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process.

**B. Analysis**

Petitioner contends that his prolonged detention is unlawful and a violation of his rights to procedural and substantive due process.

Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period." The removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, interpreting the statute to avoid any question of a due process violation, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can

establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).  Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing.  Zadvydas, 533 U.S. at 699-701.

However, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.  The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock."  Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed.Appx. 919, 924 (3d Cir. 2003).

Respondents assert in their brief that Petitioner has failed

9

to cooperate, and that his continued detention is therefore lawful.  Specifically, Respondents contend that Petitioner is giving incorrect information regarding his name and date of birth, which is preventing the El Salvador consulate from being able to verify his identity. Petitioner has been advised in the Warnings for Failure to Depart that he must comply with efforts to effectuate his removal.  However, according to the affidavit provided by Respondents, Petitioner provided identity information to the El Salvador consulate which does not match their files and the consulate believes that Petitioner is lying.  The consulate is unable to issue travel documents until they confirm his identity.  Petitioner states only that it is "his understanding" that the consulate has not responded to the government's request for a travel document.

In this case, Petitioner has failed to cooperate in his removal and has failed, in this Court, to establish that there is no likelihood of his removal in the reasonably foreseeable future.  Though Petitioner states in his petition that he has "cooperated fully" with ICE's efforts to remove him and provided his correct name and biometric information, he does not provide any support for said statements.  Further, as stated above, Petitioner has even provided multiple names to this Court, filing the instant petition under the name "Diaz-Martin" and a subsequent petition under "Diaz-Marin", both times using the same

10

identification number.  With regard to ICE's efforts to remove him, Petitioner only makes conclusory statements that it is "his understanding" that the consulate has not responded.  However, that allegation is belied by the fact that Petitioner has had two interviews himself with the consulate.  Therefore, at this time, there is no statutory or due process violation in his continued detention.   However, as Respondents acknowledge, repatriation is a shared responsibility of the government and the alien.  Therefore, the petition is denied without prejudice at this time, but this Court shall consider a renewed application for relief if, after full cooperation from Petitioner in meeting the government's clearly articulated requirements, the government remains unable to effectuate Petitioner's removal.[2]

---

[2] Petitioner also makes conclusory, generalized arguments that his detention violated his procedural due process rights because he is being denied a "timely and meaningful opportunity to demonstrate that he should not be detained".  However, this argument is without merit.  Petitioner has received custody reviews as documented by the decisions of August 30, 2011 and December 20, 2011.  Further, his argument that he is entitled to a "neutral arbiter" is also without merit.  See Robinson v. District Director for ICE, 2009 WL 3366439, at * 5 (M.D.Pa. October 19, 2009) ("Petitioner's conclusionary allegation that '[t]here is no administrative mechanism in place for the petitioner to obtain a decision from a neutral arbiter or appeal a custody decision....' is insufficient to support his stated due process claim."); Rene v. Secretary Of Dept. Of Homeland Security, 2007 WL 708905, at * 6 (D.N.J. March 05, 2007) ("However, nothing in the language, construction or legislative history of [the enabling statutes underlying Section 241.4] indicates that Congress intended for an alien to have either the authority to compel a custody review or the right to seek a review by a body other than the delegated agency.")

11

### III. CONCLUSION

For the reasons stated above, the Petition is denied without prejudice at this time.  An appropriate order follows.

Dated: October 2, 2012

>  *s/Peter G. Sheridan*
>  PETER G. SHERIDAN, U.S.D.J.